**The below described is SIGNED.**

**Dated: March 21, 2008**    _____
**GLEN E. CLARK**
**U.S. Bankruptcy Judge**



IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ENECO, INC. | ) | Bankruptcy Case No. 08-20319 |
| | ) | |
| Debtor, | ) | Chapter 11 |
| | ) | |
| | ) | FINDINGS OF FACT AND |
| | ) | CONCLUSIONS OF LAW |
| | ) | |

This matter came before the court on the thirteenth and fourteenth day of March, 2008 at 10:00 a.m. on the motion of Max Lewinsohn and Maximillian & Co. to Abstain under § 305, to Convert or Dismiss under § 1112, to Appoint a Trustee under § 1104, or for Relief from the Automatic Stay under § 362(d). Jefferson W. Gross, Sean N. Egan and Joel T. Marker appeared on behalf of Max Lewinsohn and Maximillian & Co. ("L&M"); Annette W. Jarvis, Steven T. Waterman, Peggy Hunt and Cameron Hancock appeared on behalf of Eneco, Inc; Penrod W. Keith appeared on behalf of the Official Committee of Unsecured Creditors; and Peter J. Kuhn appeared on behalf of the United States Trustee.

1

Pursuant to Federal Rule of Bankruptcy Procedure 7052, the Court makes the following Findings of Fact and Conclusions of Law:

1. At the commencement of the hearing to consider the motion to abstain, convert, dismiss, to appoint a trustee, or for relief from the automatic stay, the Court directed the parties to present their evidence and fully address certain allegations raised in L&M's motion. The allegations raised are as follows: 1) The Debtor's failure to produce requested documents; 2) The three million dollar claim against Catalyst Investment Group ("Catalyst") that is alleged to have been waived by the Debtor on the eve of bankruptcy; 3) The release of a three million dollar claim against Debtor's European subsidiary that is alleged to have occurred on the eve of bankruptcy; 4) The preference payment alleged to have been made to Thomas DePetrillo; 5) The preference payment alleged to have been made to Harold L. Brown; and 6) the payments alleged to have been made by Catalyst to principals of the Debtor corporation in return for placing persons that are friendly to Catalyst on the Debtor's board of directors.

2. Having been directed to proceed in the above order, both the Debtor and L&M were given the opportunity to, and did fully, put on their evidence with respect to each of the above allegations raised in L&M's motion.

**(Alleged Failure to Produce Documents)**

3. On January 18, 2008, the Debtor filed a voluntary Chapter 11 petition.

4. On February 7, 2008, the Debtor filed a Debtor-In-Possession financing motion.

5. On February 8, the Court heard the Debtor's financing motion. L&M objected to Debtor's motion arguing, among other things, that L&M needed additional information regarding the Debtor's financial condition.

6. The Court granted the Debtor's interim financing motion by Order dated February 12, 2008. The Order, in part, provided that "parties in interest are permitted to conduct expedited discovery concerning the DIP Financing Motion; specifically, depositions shall occur on ten (10) days notice and documents shall be produced ten (10) days after written requests".

7. On February 11, 2008, L&M served requests for production of documents on the Debtor.

8. The Debtor did not timely and did not fully and truthfully respond to the requests for production of documents as evidenced by the testimony of Dr. Brown.

9. Dr. Brown is the President, Chief Operating Officer and a Director of the Debtor corporation.

10. The Court finds Dr. Brown's testimony to be honest and accurate.

11. Dr Brown testified that documents that had been requested for production were not produced by the Debtor despite the fact that the requested documents were in the possession of the Debtor and available to be copied or otherwise produced.

12. The Court finds that the Debtor failed to produce requested documents which were in the possession of the Debtor and were available to be copied or produced.

13. The Debtor did not attempt to obtain a protective order excusing the need to produce the documents until March 6, 2008, a full 24 days after the request for production was served.

**(Debtor's Bank Account Information)**

14. On January 17, 2008, one day before filing its bankruptcy petition, the Debtor entered into a Share Subscription Agreement with ARM, a company closely related to Catalyst.

15. In conjunction with the Share Subscription Agreement with ARM, $275,000.00 was transferred into the Debtor's account with Washington Trust Company ("Washington Trust").

16. Thomas DePetrillo ("DePetrillo") is Chairman of the Board of Directors and the Chief Executive Officer of the Debtor corporation.

17. DePetrillo exerts some level of control over how funds in the account at Washington Trust are directed.

18. Upon approval of the Debtor's interim DIP financing motion on February 12, 2008, $250,000.00 was transferred out of the Washington Trust account.

19. After the transfer of the $250,000.00, the sum of $25,000.00 remained in the Washington Trust account.

20. At the first meeting of creditors conducted on February 21, 2008, the United States Trustee requested that the Debtor provide additional detail with respect to the Washington Trust account.

21. The Debtor listed the account at Washington Trust as being closed in January, 2008 in its amended Statement of Financial Affairs which was filed on February 28, 2008.

22. The existence of and the disposition of the $25,000.00 is not disclosed in the Debtor's schedules or statements and is not disclosed in the Debtor's amended schedules and statements.

23. The existence of and the disposition of the $25,000.00 is not disclosed in the Debtor's monthly financial report filed with the Court on February 15, 2008 and is not disclosed in the Debtor's amended monthly financial report filed on February 28, 2008 despite the request of the United States Trustee to provide additional information.

**(The Three Million Dollar Claim Against Catalyst)**

24. The Debtor entered into a financing agreement with Catalyst wherein the Debtor paid Catalyst a substantial sum of money and in return, Catalyst provided the Debtor with a firm commitment to obtain five million dollars in funding for the Debtor.

25. On January 17, 2008, one day before filing its bankruptcy petition, the Debtor entered into a Share Subscription Agreement with ARM, a company closely related to Catalyst.

26. The Share Subscription Agreement with ARM (Debtor's Exhibit #9) provided that "this agreement supersedes and revokes in full any and all previous offers of investment and/or confirmations of investment into the Issuer and/or any of its related companies, made by the Subscriber and/or the Advisor and/or Catalyst Investment Group or Catalyst Financial Services S.A., including the confirmation letters signed by Tim Roberts and dated the 22nd December 2006."

27. Tim Roberts is the President of Catalyst.

28. At the first meeting of creditors, the Debtor was instructed by the United State Trustee to provide detail about the Share Subscription Agreement with ARM.

29. Other than mentioning the agreement as a purchase or sale of stock, no meaningful details of the January 17, 2008 Share Subscription Agreement with ARM and it's potential release of Catalyst from its commitment to raise five million dollars for the Debtor are found in the Debtor's schedules and statements or amended schedules or statements.

**(The Three Million Dollar Claim Against Eneco Europe)**

30. Debtor is a 80% owner of a subsidiary, Eneco Europe PLC.

31. On December 20, 2007, Eneco Europe PLC was put into administration which is an analog to bankruptcy in the United Kingdom.

32. On January of 2008, Eneco Europe PLC owed the Debtor approximately $3,500,000.00.

33. On January 17, 2008, Dr. Brown acting as director of the Debtor and as a director of Eneco Europe PLC, modified an agreement between the Debtor and Eneco Europe PLC.

34. The effect of the modification was to release or forgive an indebtedness of approximately $3,500,000.00 owed by Eneco Europe PLC to the Debtor.

35. The Debtor received nothing in return for the release of the $3,500,000.00.

36. The modification of the Eneco Europe PLC agreement was not meaningfully disclosed in the Debtor's schedules or statements.

37. Despite being directed by the United States Trustee to provide additional detail regarding the $3,500,000.00 release, the Debtor has failed to provide additional detail in the Debtor's amended schedules and statements.

**(Possible Preference to Thomas DePetrillo)**

38. Thomas DePetrillo ("DePetrillo") is Chairman of the Board of Directors and the Chief Executive Officer of the Debtor corporation.

39. On or around January 18, 2008, but prior to the filing of Debtor's bankruptcy petition, Depetrillo lent the Debtor $20,000.00 in order for the Debtor to be able to post a bond.

40. The $20,000.00 loan by Depetrillo to the Debtor is disclosed in Debtor's Statement of Financial Affairs.

41. On or around February 12, 2008, Depetrillo, withdrew $20,000.00 from an account owned by the Debtor in order to repay himself the $20,000.00 prepetition loan.

42. The postpetition repayment of the $20,000.00 to Depetrillo was not in the ordinary course of business.

43. Depetrillo withdrew the $20,000.00 from Debtor's bank account and repaid himself without permission of the Court.

44. The repayment of the $20,000.00 to Depetrillo was an unauthorized postpetition transfer.

**(Possible Preference to Dr. Brown)**

45. Dr. Brown is the President, Chief Operating Officer and a Director of the Debtor corporation.

46. On January 18, 2008, prior to the moment that Debtor filed its bankruptcy petition, the Debtor paid the sum of $20,000.00 to Dr. Brown.

47. The $20,000.00 payment to Dr. Brown is disclosed by the Debtor as a payment for wages with the sum of $41,833.31 remaining owed to Dr. Brown.

48. Dr. Brown is an insider of this Debtor.

**(Allegations of Payments in Return for Favorable Appointments of Directors)**

49. The Court finds no facts that sustain allegations of payments made by Catalyst to any officer or director of the Debtor in return the appointment of directors to the Debtor's board that are friendly to Catalyst.

**(Other Facts)**

50. It has become apparent to the Court that the employees of this Debtor, while probably being eminently qualified with respect to scientific research, are not well qualified perform the duties required of a Chapter 11 debtor-in-possession.

51. Since the petition date, the Debtor has made it known to the court that employees of the Debtor, are necessary to complete research in order to bring the Debtor's patents to market. At the same time, Debtor has made it known that the duties of the Debtor and the need to respond to discovery requests and the like, have had the effect of distracting Debtor's employees attention.

52. The appointment of a Chapter 11 trustee would have the effect of permitting the employees of the Debtor to focus upon the task of completing their invention and free them from the time consuming duties and responsibilities of a Chapter 11 debtor-in-possession.

53. This Debtor has, since the petition date, been involved in protracted and costly litigation with L&M.

54. The appointment of a Chapter 11 trustee will likely reduce or possibly eliminate the litigation between this estate and L&M and ameliorate the fighting among shareholders and current and former officers and directors.

55. It is in the best interest of creditors that this Debtor avoid protracted and costly litigation.

56. The Debtor has maintained and is current on all of its patent licencing fees.

**CONCLUSIONS OF LAW**

As to L&M's motion to Abstain, Convert or Dismiss, or to Appoint a Trustee, the Court finds In re Oklahoma Refining Co., 838 F.2d 1133, at 1136 (10th Cir. 1988) to be controlling wherein it states that "[o]nce the court has found that cause exists under § 1104, it has no discretion but must appoint a trustee." Specifically, the Court makes the following Conclusions of Law:

1. Both the Debtor and L&M were given the opportunity and did present evidence with respect to the relevant issues raised in L&M's motion.

2. The Debtor failed to comply with the discovery requirements found in the Interim Financing Order dated February 12, 2008.

3. "[F]ailure to keep adequate records and make prompt and complete reports justifies the appointment of a trustee." Oklahoma Refining Co., 838 F.2d at 1136.

4. The inability or refusal of the Debtor to fully and truthfully respond to a document request in compliance with the Court's interim financing order is grounds for the appointment of a trustee.

5. The inability or refusal of the Debtor to provide meaningful information in its schedules, statements and/or monthly financial reports regarding the Washington Trust account justifies appointment of a trustee.

6. The inability or refusal of the Debtor to provide meaningful information in its schedules, statements and/or monthly financial reports regarding the subscription share agreement justifies appointment of a trustee.

7. The inability or refusal of the Debtor to provide meaningful information in its schedules, statements and/or monthly financial reports regarding the release of indebtedness of

approximately $3,500,000.00 owed by Eneco Europe PLC to the Debtor justifies appointment of a trustee.

8. "[A] history of transactions with companies affiliated with the debtor company is sufficient cause for the appointment of a trustee where the best interests of the creditors require." Oklahoma Refining Co., 838 F.2d at 1136.

9. The transaction with Catalyst on the eve of bankruptcy is sufficient cause for the appointment of a trustee.

10. The transaction with Eneco Europe PLC on the eve of bankruptcy is sufficient cause for the appointment of a trustee.

11. It is in the best interest of creditor that a Chapter 11 trustee be appointed to investigate the transactions with Catalyst.

12. It is in the best interest of creditor that a Chapter 11 trustee be appointed to investigate the transactions with Eneco Europe PLC.

13. Thomas DePetrillo, the Debtor's Chairman of the Board of Directors and Chief Executive Officer, may be the recipient of a $20,000.00 unauthorized postpetition transfer. There is a need for an independent investigation of this.

14. Dr. Brown, who is the Debtor's President, Chief Operating Officer and a director of the Debtor corporation is the recipient of a $20,000.00 preference.

15. The willingness to leave the debtor in possession is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee. In re Americana Expressways, Inc., 133 F.3d 752 at 756 (10th Cir. 1997).

16. The Court records disclose that the President of Catalyst is identified as a member of the Official Unsecured Creditors Committee which consists of three members. The Court concludes that the Unsecured Creditors Committee cannot be relied upon to perform duties of the Debtor when the Debtor is conflicted.

17. Because Debtor's President and Chairman of the Board of Directors are both recipients of avoidable transfers, it is in the best interests of creditors that a Chapter 11 trustee be appointed to investigate the transactions.

18. It is in the best interests of creditors that a Chapter 11 trustee be appointed in order to shoulder the duties and responsibilities required of any entity involved with a Chapter 11 reorganization in order to free the employees of this Debtor to proceed with their scientific research.

19. It is in the best interests of creditors that a Chapter 11 trustee be appointed in order to allow the Debtor's employees to focus entirely upon completion of their invention.

20. This Debtor has been, and continues to be involved, in protracted and costly litigation with L&M.

21. It is in the best interests of creditors that a Chapter 11 trustee be appointed in order to reduce the likelihood of protracted and costly litigation with L&M.

22. It is in the best interest of creditors that this Debtor avoid protracted and costly litigation.

End of Document